RUGGLES (STEVENS v.). See Case No. 13,-408.

RUGGLES (UNITED STATES v.). See Cases Nos. 16,204 and 16,205.

———

## Case No. 12,122.

### RUGGLES v. YOUNG.

[1 MacA. Pat. Cas. 160.]

Circuit Court, District of Columbia. Feb., 1853.

PATENTS—INTERFERENCES—EVIDENCE OF PRIORITY—PRINTING PRESSES.

[On the weight of the evidence, held, that James Young was entitled to priority over S. P. Ruggles in respect to the invention of an improvement in printing presses, consisting of a combination of the platen with an eccentric shaft for the purpose of stopping the impression without stopping the machine.]

[This was an appeal by Stephen P. Ruggles from a decision of the commissioner of patents, in interference, awarding priority to James Young in respect to the invention of an improvement in printing presses.]

A. B. Stoughton, for appellant.
Mr. Baldwin, for commissioner.

MORSELL, Circuit Judge. According to notice given of the time appointed for the hearing of the appeal in this case, the parties above named appeared by their respective attorneys and submitted the case upon the reasons, report of the commissioner of patents, the proofs, &c. The petition states that the petitioner had invented a new and useful improvement in printing-presses, and prayed that letters-patent might be granted therefor. As the application, so far as respects the construction of a vibrating platen, seems to be waived, it will be unnecessary to take further notice of that. In the third part of the description of his claim, he says: "I claim, in combination with the platen, 'the eccentric shaft, for the purpose of stopping the impression without stopping the machine, as herein described and represented.' Fourth. I claim, in combination with the platen and eccentric shaft, the lever with its screw, for the purpose of adjusting the press for taking a heavy or light impression, as fully set forth and described," which particular description is as follows: "Passing through the platen D is an eccentric shaft P (Fig. 2), upon which the platen moves, and the axis of which eccentric acts also as the axis of the platen. Upon one end of this eccentric shaft P is attached a lever Q, which, upon being drawn down, also draws down the axis of the platen sufficiently far to prevent it from reaching the form, by which device the impression can be stopped without stopping the press. In the lever Q is a set-screw R, the end of which rests against a shoulder formed in the platen, and by which the platen may be so adjusted as to admit of taking a heavy or light impression, as may be desired—the action of the set-screw R and lever Q being to raise or lower the platen by turning the eccentric shaft P forward or back, as may be desired. The eccentric shaft is here described as passing through the platen. It may be arranged behind or underneath the platen, and produce the same result." Upon an examination at the office it was declared that there was an interference on the above-described claim and a claim set up by James Young, in these words: "Fifth. I claim the eccentric by means of which the impression is thrown off, substantially in the manner and for the purposes specified, to wit, the making and the mode of throwing off the impression, &c. These levers are of the first order" (meaning the arms of the platen), "and have their fulcrum at H in the lower cross-bar of the frame. This fulcrum has an eccentric H (see Fig. 3), by turning which the impression is

thrown off or on at pleasure by raising or lowering the position of the platen, and this is effected by moving the hand-lever F, shown in Fig. 2. Instead of the eccentric being placed at this point, the fulcrum may be permanent, and an eccentric or inclined plane put under the platen B, an obvious arrangement, that would be the equivalent of that described and represented." Of this declaration, due notice was given, a time appointed for the trial of the controversy between the parties, and the case was regularly tried upon the proofs and evidence adduced by the respective parties, and a decision was given in favor of Young. From which decision an appeal has been taken, and, as before stated, the case is before me for revision.

The reasons for the appeal are that he, the appellant, made the first application of the eccentric, pin, shaft, or movement, for the purpose of regulating or increasing or diminishing the distance between the bed and platen of a printing-press a long time before Mr. Young adopted it; that he has furnished the commissioner of patents with abundant legal evidence of this fact; that he thinks the commissioner of patents, in granting Mr. Young a patent for the use of the same thing in any particular location on a printing-press, has infringed on his just and legal rights, and made a decision directly opposed to both the law and facts in the case; that he first used the eccentric shaft for increasing and diminishing the distance between the bed and platen of a printing-press, in connection with one end of a toggle or connecting-rod or pitman, the other end of said toggle being connected with the platen, and that Mr. Young has merely placed the eccentric at the opposite end of the toggle or connecting-rod or pitman; that his so placing it is in fact and in law equivalent to his plan or device; that persons most skilled in mechanics have given this as their opinion, under oath—that if it is possible that the commissioner of patents has the power (which he denies) to grant to Mr. Young a patent for his particular location of his (appellant's) eccentric, it could not be used there without manifestly interfering with his rights; that "throwing off" or "throwing on" the impression on a printing-press are nothing but technical terms used to express the increasing or diminishing of the distance between the bed and platen. The other parts of the statement allude to supposed injustice done the appellant in giving him less in his patent of November 16th, 1852, than he had a right to, and of the commissioner's abandoning the ground of interference in this case. This cannot now be properly considered as a part of this case. Whether the decision is correct or erroneous, must depend upon the evidence and proofs which have been acted upon in the trial before the commissioner. The points on which the parties seem to agree in this case are that the improvements in the printing-press for which they claim a patent, respectively, are substantially the same, and that the same are patentable; that said improvements consist in an eccentric shaft passing through or below the platen, in combination therewith, on an axis common to both, by means of which the platen may be so regulated or adjusted that whilst in motion the impression may be thrown off or on without stopping the machine.

The simple question, then, is as to priority. James Young's proof establishes a drawing shown by him in the year 1850. The witnesses on the part of Mr. Ruggles do not fix any precise time when they saw the improvements as presented by the model in this case. His petition was filed on the 26th of February, 1851. Jedidiah Morse says Mr. Ruggles gave him the plan generally of the rotary press in the year 1849, but cannot say when the plan of the eccentric shaft or bearing was first communicated to him, but was in fact first used in the year 1850 or 1851. This evidence is too vague and uncertain. The testimony of several other witnesses has been added, the substance of which, so far as is deemed material, will be now noticed. The testimony of William C. Hibbard consists of a description of the press called the Ruggles job-engine and a comparison between that and the rotary press. He says that as regards the method of adjusting the distance between the bed and platen by means of an eccentric journal or bearing, he considers them identically the same in principle, the difference consisting only of form and structure; that the Ruggles job-engine has the eccentric crank-pin with a connecting rod or pitman hinged to the platen, as already described by him. Upon cross-examination he says that he had no knowledge of Mr. Ruggles ever having used an eccentric shaft or pin for a "throw off" (except in the rotary press) in combination with a platen; that he does not know when said last-mentioned press was made. Charles M. Morse states that it was made five years ago—July 2d, 1852, time of taking the deposition. John C. Crosman describes more particularly the contrivance and its movement as applicable to the same press. He says the eccentric shaft or pin is placed in a gear-wheel matching into the end of the toggle of the press, and turning it to the right or left increases or diminishes its distance from the centre of the wheel, and consequently lengthens or shortens the toggle; the shaft was supported by passing through two flanges, the wheel answering for one of them; its form was eccentric; it was made fast by a set screw passing through the ends of an arm on one end of it. By turning to the right or left—he means turning with and against the arm—the middle part of the shaft or pin was made eccentric. This shaft or pin itself could turn no other way, except in revolving upon its axis in its socket or

bearings. He says the contrivance was first made by Mr. Ruggles; that it was three or four years after Ruggles obtained his patent, in the year 1840, when he first saw it; it was on Mr. Ruggles' press, which might have been as late as the year 1845, but thinks it was earlier; it accomplished its object well, and has been applied to nearly all his presses—his larger ones—since that time. On cross-examination he says the mode of throwing off the impression was by moving the toggle out of the line of the eccentric-pin; this prevents the bed from rising. The office of the eccentric-pin was to regulate or graduate the impression, but not to throw the impression off entirely; that he does not know that Mr. Ruggles ever did use an eccentric-pin or shaft for throwing off the impression entire. Jedidiah Morse states that Mr. Ruggles originated a contrivance applicable to printing-presses to vary the degree or amount of pressure with which the platen and bed of the press, with types, are brought together; he says the contrivance was a shaft having two centrics at each end, one at each end used for turning the journal, and the two outer centrics used for turning the eccentric; he first saw it on Mr. Ruggles' press in the winter of 1844 or 1845; that it worked well. On his cross-examination he says the mode used by Mr. Ruggles in throwing off the impression entire was by pulling a knob or handle connecting with the toggle towards the operator; this throws the toggle out of the line the eccentric describes. This examination appears to have been on the 1st of June, 1852. On the 1st of July, 1852, he was again examined, on which last examination he gives a description of the Ruggles rotary-press and the use and operation of the eccentric-shaft by itself; that Mr. Ruggles first informed him of the plan of putting an eccentric-shaft into or behind the platen of a printing-press as early as the year 1845, and that he built and put it into practical operation the same year on a press of his invention; that Mr. Ruggles gave him the plan, generally, of the rotary-press in the year 1840, but cannot say when the plan of the eccentric-shaft or bearing was first communicated to him, but in fact was introduced in the year 1850 or 1851; that the eccentric-movement or bearing for regulating the distances between the bed and platen was used by Mr. Ruggles in the year 1845 on his press known as the Ruggles job-engine. He then states what he terms the prominent features of that press, &c.; that the impressions on both are given by a crank movement, the only difference being that on the rotary-press there are two connecting-rods or pitmans which pull the platen up against the type or bed, while on the job-engine there is but one connecting-rod or pitman, which pushes the platen to the type or bed to give the impression; on the rotary-press the eccentric-shaft or bearing is introduced and operated at one end of the two connecting rods or

pitmans, and on the job-engine press at the opposite end, with one connecting-rod or pitman. On this occasion the witness was not cross-examined, and says nothing as to the job-engine improvement in throwing off entirely; but I suppose that he does not mean to be understood, from the terms he has used, as expressing the fact to be different from what he has said it was on that occasion.

The testimony on the part of the appellees will now be stated, or so much of the substance as may be deemed material: William Henry Egle testifies to an interview which took place at the shop of James Young in the latter part of January, 1851, between Mr. Ruggles and Mr. Evans and Mr. Young, on the very subject of this improvement, which was then shown by Young to them on one of Mr. Ruggles' rotary-presses; that thereby, without stopping the motion of the press, a great deal of paper could be saved from waste when laid on crookedly; that his (Young's) improvement consisted of the use of an eccentric-shaft, which passed through the platen and crank-arms, having a handle on the extreme end fastened to the eccentric-shaft, by turning which the effect was to lengthen or shorten the crank-arms, and so throw off or on the impression, as well as to regulate the impression, for which purpose it was used and was readily adapted. When Mr. Ruggles saw the improvement he said to Mr. Young, "I would have used a simple stop-pin to check it—that is, the eccentric—instead of your check plate and springs to check or stop it." Mr. Young then asked Mr. Ruggles whether he was aware that by having an eccentric through one crank-arm alone you cannot throw the impression off or on both sides. Ruggles said, "I see it runs all the way through the platen." Mr. Young said, "Of course; how else could the impression be thrown on both sides, or regulated, except the shaft run clear through the platen from side to side?" Ruggles did not pretend to claim it as his invention at all. Joseph T. Rowand says he thinks, in September or October, 1850, Mr. Young showed him a plan or drawing of an improvement in a printing-press, which consisted of an eccentric-shaft, which passed through the platen, and was intended to throw on or off the impression from the printing-press. It was afterwards put in operation and applied to one of Ruggles' printing-presses then in use by Young. Phinehas Dow says that on the 28th of October, 1850, he made an improvement in a printing-press for throwing off the impression, &c., describing it as the other witnesses have done; the plan of said improvement was brought to him by James Young; the press on which it was put was built by Mr. Ruggles. He proves that the difference in principle between that and Mr. Ruggles' job-press is, that by the latter the impression can be thrown off only by throwing the toggle out of gear, &c. He then particularly describes the improvement by Mr. Young, consisting of the

eccentric-shaft in combination with the platen and crank-arms, and proves, also, that Young's throw-off has this advantage: that the impression can be thrown off when the platen is almost touching the type, &c.; that in Ruggles', if the toggle were not thrown out of gear in time, before the cog-wheel in its rotation brought the eccentric-pin into connection with the toggle, it could not prevent the impression being made. This witness was again examined on the 1st of July, 1852, but I can observe nothing materially variant from what he had already said on his first examination.

The amount of the testimony, then, on the part of the appellant appears to be that, as far back as the year 1844 or 1845, the eccentric-shaft or pin was used in the Ruggles job-engine, through or behind the platen, for regulating the distances between the bed and platen; that it was placed in a gear-wheel matching into the end of the toggle of the press, and by turning it to the right or left, it increased or diminished the distance from the centre of the wheel, and consequently lengthened or shortened the toggle. And some of the witnesses say it was identically the same in principle with the rotary-press; but the testimony also shows that in its operation the mode of throwing off the impression was by moving the toggle out of the line of the eccentric-pin, which prevents the bed from rising, and that the office of the eccentric-pin was to regulate or graduate the impression, but not to throw the impression off entirely. On the other hand, the testimony shows that Young's improvement consisted of the use of an eccentric-shaft, which passed through the platen and crank-arms, having a handle on the extreme end fastened to the eccentric-shaft, by turning which the effect was to lengthen or shorten the crank-arms, and so to throw off or on the impression, as well as to regulate the impression, and that this can be effected whilst the press is in motion and the platen is almost touching the type. The difference thus shown I think very material and important. That part of the testimony, also, which states the circumstances that took place in the shop of Mr. Young in January, 1857, between Mr. Ruggles, Mr. Evans, and Mr. Young, warrants a strong inference that the principles of Young's improvement had not been known to Mr. Ruggles before that time, but were new to him.

Upon the most careful examination, therefore, of this case, with the reasons of appeal and the evidence applicable to the issue between the parties, I am of opinion, and so determine, that James Young has established a priority of invention of the improvement of the printing-press, consisting of the eccentric-shaft, in combination with the platen, in throwing off and on the impression whilst the press is in motion, &c., as before stated, and that he is entitled to a patent therefor, and that the decision of the commissioner of patents be affirmed.